IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 09-cv-00181-WDM-KLM

ORBITCOM, INC.,

    Plaintiff,

v.

QWEST COMMUNICATIONS CORPORATION,

    Defendant.

**ORDER ON MOTION TO STAY AND TO COMPEL ARBITRATION**

Miller, J.

This case is before me on the Motion to Stay Proceedings and Petition to Compel Arbitration (doc no 18) filed by Defendant Qwest Communications Corporation ("Qwest"). Plaintiff OrbitCom, Inc. ("OrbitCom") opposes the motion. I have read the parties' written arguments and conclude that oral argument is not required. For the reasons that follow, Qwest's motion will be granted.

Background[1]

This is a dispute between two telecommunications companies. OrbitCom is a Competitive Local Exchange Carrier (a "CLEC"), with its primary place of business in South Dakota. Qwest is an Interexchange Carrier (an "IXC") and common carrier. According to the Amended Complaint, as a CLEC, OrbitCom is entitled to charge other telecommunications providers, such as Qwest, access fees to connect to OrbitCom's

---

[1] I take the following information from the Amended Complaint (doc no 16) and from the affidavits and other evidence presented in the briefs on the motion to stay. I have noted where issues of fact are disputed.

customers. OrbitCom alleges that its access fees are set forth in its tariffs and in regulations promulgated by the Federal Communications Commissions ("FCC").[2] In the Amended Complaint, OrbitCom seeks recovery of access fees for calls routed by Qwest over lines owned by OrbitCom from February 24, 2008 to the present. OrbitCom alleges that it has properly invoiced Qwest for use of its lines. Qwest disputes at least a portion of the access fees and has refused to pay any of OrbitCom's invoices.

Qwest's motion contends that arbitration of their disputes is required pursuant to an April 2004 contract between the parties known as the Wholesale Service Agreement ("WSA"). Pursuant to section 1.3 of Service Exhibit F1 attached to the WSA, Qwest agreed to provide discounted wholesale services to OrbitCom at customer provided local access ("CPLA") rates in exchange for which OrbitCom waived its rights to charge Qwest for access charges otherwise payable by Qwest for calls directed to Qwest customers from OrbitCom users. However, by letter dated December 21, 2007 (Exhibit 3) Qwest terminated the CPLA pricing option set out in section 1.3 of the WSA Service Exhibit F1. A new billing rate was to be effective apparently after January 31, 2008, and the parties appear to agree that the new rate structure was first applied by OrbitCom on February 24, 2008. Qwest's notice acknowledged that with its termination of the CPLA rate, OrbitCom "may charge Qwest applicable access charges." The notice also

---

[2]Qwest disputes that OrbitCom has a proper tariff governing the rates that are the subject of this case. OrbitCom contends that it had and has properly filed intrastate tariffs in all states in which it operates and that pursuant to the FCC guidelines it did not need an interstate tariff filed with the FCC until February 2009. I need not resolve this issue of fact or of fact and law to determine the arbitrability of the fee dispute, as no party contends that the rates for the access fees are set by the contract claimed to apply here.

provided that all terms of the agreement and service exhibits which were not changed by the notice would remain "in full force and effect."  Exhibit 3.

Qwest contends that, prior to the termination of the CPLA rate and notwithstanding the terms of the WSA, OrbitCom erroneously charged access fees to Qwest from April 2004 until February 24, 2008.  Apparently, Qwest paid some, but not all, of these charges and now contends that it is entitled to a refund.  OrbitCom apparently also claims amounts are due for access or services provided Qwest during the same time period prior.  However, neither of these claims is directly presented by Plaintiff's complaint which is limited to access charges covered by the February billing, and thereafter–that is, after the termination of the CPLA rates set forth in section 1.3 of Service Exhibit F1.

Qwest's motion is based upon an arbitration provision in the WSA which requires that, with an exception not applicable here, "any dispute arising out of, or relating to, this Agreement shall be settled by arbitration" and that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*, would govern issues relating to arbitrability.  Neither party has filed a request for arbitration pursuant to the WSA regarding the alleged over-charging of access fees or claimed amounts due prior to the termination of the CPLA rate.  Nevertheless, as to the charges billed by OrbitCom for access provided subsequent to the period when the CPLA rate was effective, Qwest has withheld payment for those access charges in an attempt to recoup the amounts it claims were wrongfully charged by OrbitCom during the period when the CPLA rate was effective "prior to the February 24, 2008 billing."  Qwest accordingly claims that, since this amounts to a setoff or counterclaim to OrbitCom's claims in this law suit, the issues of this case "arise out of or

relate to" the WSA and arbitration should be compelled.  Alternatively, Qwest seeks a stay of this law suit pending arbitration of the refund issue.

OrbitCom responds that Qwest's cancellation of the CPLA rate terminated the entire agreement or that the agreement expired and, accordingly, there is no agreement to arbitrate.  OrbitCom argues that the case should be analyzed in terms of whether the arbitration clause "survives the termination of the contract and is broad enough to encompass this matter."  Response to Motion to Stay at p. 7.  Qwest disputes that the WSA was terminated in its entirety.  It is not disputed that the discounted CPLA rate was terminated in January of 2008 or that OrbitCom's corresponding obligation under the WSA to waive access fees therefore ceased at the same time.  I need not resolve at this juncture whether the entire agreement was terminated.

## Standard of Review

The Federal Arbitration Act mandates a stay of a judicial proceeding where the parties have executed a written arbitration agreement covering the dispute:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

"The Supreme Court has long recognized and enforced a liberal federal policy favoring arbitration agreements," and "[u]nder this policy, the doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Nat'l Am. Ins. Co.*

*v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir.2004) (quotations omitted). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation omitted).

In determining whether a claim is arbitrable, I must examine the factual underpinnings of the complaint rather than merely considering the labels attached to each of the causes of action it contains. *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, ___ F.3d ___, 2009 WL 1520109 at *4 (10th Cir. 2009). In general, to determine whether a dispute falls within an arbitration clause, I should first classify the particular clause as either broad or narrow. *Cummings v. FedEx Ground Package System, Inc.,* 404 F.3d 1258, 1261 (10th Cir. 2005) (citation omitted). "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir.2001)).

Discussion

The parties do not dispute that the WSA arbitration clause is broad rather than narrow. As provided in *Cummings,* 404 F.3d at 1261, the law of this circuit requires such classification and when the arbitration clause is classified as broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." Although one may well question the utility of making this

5

classification, *see Chelsea*, ____ F3d ____, 2009 WL 1520109 at * 8 (10th Cir. 2009) (Gorsuch J., concurring), I am compelled to apply that standard given the parties' acknowledgment and the broad language of the arbitration clause that it encompasses all disputes "arising out of, or relating to" the WSA.[3]

As noted, the parties apparently have disputes concerning the application of rates and waivers under section 1.3, concerning the CLPA rate, which are clearly disputes covered by the arbitration clause.  On the other hand, Plaintiff's carefully limited complaint raises issues collateral to the WSA, as no showing has been made to suggest that OrbitCom's claimed entitlement to access fees from Qwest after termination of the CLPA rate is somehow determined by the WSA.  Accordingly, the question becomes whether the litigation of this collateral matter "implicates issues of contract construction or the parties' rights and obligations under" the WPA.  *Cummings*, 404 F.3d at 1261.

At first blush, OrbitCom's claim does not involve any facts or occurrences that arose prior to the actual termination of the CLPA rate and waiver.  The amount claimed is not based on any provision of the WSA but rather on fees or rates allegedly applicable pursuant to OrbitCom's tariff and federal regulation.  There has been no showing that the WSA must be interpreted to establish the amount allegedly due.  Similarly, so long as one focuses solely on any amount due after the CPLA rate and waiver terminated, the parties' rights and duties under the WSA may not be implicated.  However, I cannot place blinders on the reality that the parties are engaged in an

---

[3]If construed as narrow there is no presumption of arbitrability and a collateral matter is generally not covered by the arbitration clause.  *Cummings*, 404 F.3d at 1261.

ongoing relationship and that they have unresolved claims under the WSA concerning acts and omissions which occurred prior to the rate and waiver termination and which indisputably must be arbitrated.  The result of that arbitration may well impact the final result of this case.  For example, if Qwest prevails on its claims in arbitration it will have a setoff against any amount claimed in this case by OrbitCom.  Indeed, given the ongoing relationships, Qwest's claims may well be considered to arise out of the same transactions or occurrences so as to be a compulsory counterclaim in this case pursuant to Fed. R. Civ. P. 13(a)(1).

The issue is close but when I weigh the public interest against piecemeal litigation and resolve doubts concerning the scope of arbitrability issues in favor of arbitration, *United Steel Workers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960), I conclude that Plaintiff has not overcome the presumption of arbitration and Defendant's motion to compel should be granted.

Accordingly, it is ordered:

1. Defendant's Motion to Stay Proceedings and Petition to Compel Arbitration (doc. no. 18) is granted.

2. The Plaintiff shall submit all of its claims under the WSA, as well as the claims set forth in this case, to arbitration pursuant to the parties' arbitration agreement in the WSA.

3. Defendant may file a motion for attorneys' fees pursuant to D.C.COLO.LCivR 54.3 and § 7 of my Pretrial and Trial Procedures, on or before July 27, 2009.  Plaintiff may respond on or before August 27, 2009.

4. This case is administratively closed in accordance with D.C.COLO.LCivR

41.2, subject to reopening for good cause. If the parties do not file a stipulation for dismissal with prejudice or a motion to reopen this case for good cause on or before December 28, 2010, this case shall be automatically dismissed without prejudice.

DATED at Denver, Colorado, on June 25, 2009.

BY THE COURT:


s/ Walker D. Miller
United States Senior District Judge